Leona WEINER, Plaintiff–Appellant,

v.

INTERNAL REVENUE SERVICE, Donald Sommerset and John Doe, IRS Collection Agent, Defendants–Appellees.

No. 430, Docket 92–6152.

United States Court of Appeals,
Second Circuit.

Argued Jan. 7, 1993.
Decided Jan. 25, 1993.

Leona Weiner, pro se.

Steven C. Bennett and Thomas A. Zaccaro, Asst. U.S. Attys., S.D.N.Y., New York City (Otto G. Obermaier, U.S. Atty., of counsel), for defendants–appellees.

Before: PRATT and MAHONEY, Circuit Judges, and DANIEL M. FRIEDMAN, Circuit Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

PER CURIAM:

This appeal was originally heard on January 7, 1993, and decided by a detailed written order dated January 25, 1993, which affirmed the judgment of the United States District Court for the Southern District of New York, substantially for the reasons set forth in Judge Sprizzo's Memorandum Opinion and Order dated April 30, 1992. 789 F.Supp. 655. Upon further consideration, we conclude that our decision should be published, and we accordingly repeat the substance of our January 25th order in this opinion.

Plaintiff Weiner, appearing *pro se*, has chronicled her tale of frustrations suffered while seeking a prompt and courteous remedy from the Internal Revenue Service ("IRS") for its three erroneous and improperly executed levies upon her pension fund at Long Island University and two bank accounts. Weiner alleged several negative consequences of the erroneous tax liens, including a denial of credit when a department store relied on a credit-reporting bureau's notation of the liens on Weiner's record, loss of monthly income, embarrassment, loss of reputation at the university where the pension fund was kept, loss of credit rating, and ill health.

Weiner's efforts to resolve the situation resulted in repeated but unfulfilled verbal assurances from IRS staff that the errors would be corrected. Weiner's correspondence to the IRS seemed to have been disregarded, and her personal visits to the office were similarly unhelpful. Weiner claims that one IRS letter was illustrative of her experience with the agency. The letter instructed her that writing the IRS within the next three months, while the agency underwent a computer-system conversion, would be futile and would, in fact,

delay processing requests concerning her account.

The IRS does not dispute that the three levies were unauthorized, and that they were executed with lack of proper notice to Weiner. In fact, the IRS entered into a settlement agreement to return the funds that the IRS obtained from the wrongful levy against Weiner's pension account. We note however that the IRS waited 2-and-½ years after Weiner filed this lawsuit against it to do so.

The record is clear that Weiner's bank accounts were improperly levied upon due to "computer error" at the IRS. In this suit, Weiner seeks damages flowing from the wrongful levies. Weiner's principal concern however, is not money damages, but what seems like a reasonable request under the circumstances—that the IRS provide a letter acknowledging its multiple errors, and a "statement and or information" as to why Weiner's tax return was handled in an unauthorized manner. Weiner further asks for the IRS collection division to operate with "courtesy in handling clients", and that it acknowledge and respond to communications. Finally, in a plea that evokes almost Orwellian imagery, Weiner asks this court "[i]s there something in the IRS record that [I] should know about?"

Unfortunately, Weiner has no *legal* remedies for damages, to compel an apology from the IRS, or even to obtain an explanation of the errors that caused the improper levies. Congress has enacted a thicket of statutes that protect federal employees from liability for the improper execution of their duties, and has thereby blocked Weiner's path to legal redress in this case. The relevant provision of the tort claims act bars tort claims against the federal government which "aris[e] in respect of the assessment * * * of any tax". 28 U.S.C. § 2680(c). The anti-injunction act, 26 U.S.C. § 7421(a), similarly states that, except in circumstances not relevant here, no suit shall be maintained in any court "for the purpose of restraining the assessment or collection of any tax". Additionally, plaintiff may not sue for unlawful disclo-

sure of her confidential tax information, because "computer error" by IRS employees does not amount to knowing or negligent disclosure by United States employees. *See* 26 U.S.C. §§ 7431 and 6103. In short, although the IRS did wrong, congress has immunized it and its employees from liability for damages. While it is understandable that congress would want to protect federal collectors of revenue from harassment by taxpayer litigation, the result of that blanket protection impacts unfortunately upon a taxpayer like Weiner, who simply sought courteous and fair dealing from the IRS.

We are often expected to live with governmental actions that resist characterization as rational. And while modern urban life may bring to all its share of petty insults or injuries, we certainly sympathize with the plight of one like Weiner who, using all methods at her disposal, was still unable to secure a speedy resolution of such obvious governmental error. The reason she can not obtain the apology that she so clearly deserves is no doubt due, regrettably, to the fact that probably not one individual in the entire IRS bureaucracy believes that he or she did wrong. While this court cannot speak for the IRS, it may be some comfort to Weiner that she has convinced us that while she is entitled to no legal remedy, fair dealing and simple courtesy should have impelled the IRS to have corrected its error more expeditiously, to have apologized for having erred in the first place, and to have provided her with sufficient documentation of its error to enable her to undo some of the harm done to her.

AFFIRMED.